

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

**ENTERED
06/21/2013**

| | | |
|---|---|---|
| In re: | § | **Case No. 08-36084** |
| | § | |
| **MPF Holding US LLC, _et al._,** | § | **Chapter 11** |
| | § | |
| Debtors. | § | **Jointly Administered** |
| | § | |
| **Jeff Compton, Litigation Trustee** | § | |
| **of the MPF Litigation Trust,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | |
| | § | **Adv. Proceeding No. 10-03454** |
| **InOcean AS,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

**MEMORANDUM OPINION ON DEFENDANT INOCEAN AS' RENEWED AND
AMENDED AND SUPPLEMENTED MOTION TO DISMISS COMPLAINT WITH
PREJUDICE PURSUANT TO FEDERAL RULES OF BANKRUPTCY PROCEDURE
7012(b)(1); 7012(b)(6); OR ALTERNATIVELY, FOR SUMMARY JUDGMENT
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7056**
[Adv. Doc. No. 28]

## I.   INTRODUCTION

Jeff Compton, Litigation Trustee (the Litigation Trustee) of the MPF Litigation Trust,

brought the instant adversary proceeding to recover alleged preferential payments made to the

Defendant, InOcean AS (InOcean).   Pending before the Court is InOcean's Renewed and

Amended and Supplemented Motion to Dismiss (the Motion to Dismiss), which alleges that: (1)

the debtor assumed and assigned its contract with InOcean pursuant to section 365 of the

Bankruptcy Code,[1] and thus the Litigation Trustee is barred as a matter of law from now

pursuing a preference action against InOcean; and (2) even if the debtor did not assume and

assign its contract with InOcean, the instant preference action was, nevertheless, released

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section refers to a
section in 11 U.S.C., which is the United States Bankruptcy Code.

pursuant to the debtor's confirmed plan of reorganization. Thus, the ultimate issue which this Court now decides is whether the Litigation Trustee has standing to pursue the instant preference avoidance action against InOcean.

The Court concludes that the Litigation Trustee lacks standing to bring this preference avoidance action, and that dismissal is therefore warranted under Federal Rule of Civil Procedure 12(b)(1). The Court issues this Opinion to articulate its reasons for making this decision, as well as to emphasize two points: (1) parties to an executory contract in bankruptcy may not circumvent the requirements of section 365 of the Code; and (2) once an executory contract is assumed pursuant to section 365, the contract assumption defense bars future preference actions that seek to recover payments made pursuant to that contract. Having reviewed the pleadings and considered the evidence, this Court now makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 9014 and Federal Rule of Civil Procedure 52, as made applicable by Federal Rule of Bankruptcy Procedure 7052.[2]

## II.   FINDINGS OF FACT

1. On June 13, 2006, InOcean entered into an agreement with Wilhelm P. Blystad (the First Vendor Contract) whereby InOcean agreed to provide engineering and design work related to the construction of the vessel designated by MPF Corp. Ltd. (MPF) as "Hull MPF-01" (the Vessel). [Adv. Doc. No. 28 at 4]; [Adv. Doc. No. 29 at 2, ¶ 2].

2. On June 13, 2006, Wilhelm P. Blystad, InOcean, and MPF entered into an Assignment Agreement whereby Wilhelm P. Blystad assigned all of his rights and obligations under the First Vendor Contract to MPF. [Adv. Doc. No. 28 at 4]; [Adv. Doc. No. 29 at 2, ¶ 3].

---

[2] To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such. Moreover, to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. The Court reserves its right to make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

3.  On December 8, 2006, InOcean entered into another contract with MPF (the Second Vendor Contract) whereby InOcean agreed to provide additional engineering and design work related to the construction of the Vessel. [InOcean's Ex. No. 3]. The First Vendor Contract and the Second Vendor Contract will hereinafter be referred to collectively as "the Contract."

4.  On September 24, 2008, MPF Holding US LLC and MPF filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. [Case No. 08-36084, Doc. No. 1; Case No. 08-36086, Doc. No. 1]. On September 25, 2008, MPF-01 Ltd. (collectively with MPF Holding US LLC and MPF, the Debtors) filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. [Case No. 08-36094, Doc. No. 1].

5.  The Contract is listed on MPF's Schedule G under executory contracts. [Case No. 08-36086, Doc. No. 22 at 20].

6.  On October 2, 2008, this Court entered an Order Directing Joint Administration of these three cases. [Main Case Doc. No. 18]. This order allowed for a single disclosure statement and plan of reorganization to be filed for all three cases. [*Id.*].

7.  On May 20, 2010, InOcean, as vendor, MPF, as the Original Buyer, and COSCO (Dalian) Shipyard Co. Ltd., as the New Buyer (COSCO), entered into a novation agreement related to the Contract (the Novation Agreement). [InOcean's Ex. No. 6]. The Novation Agreement contained the following language relevant to the assignment of the Contract and a Cure Amount:[3]

---

[3] The Novation Agreement defines "Cure Amount" as follows:
> the amount of money that as of the Effective Date the Parties will deem owed to [InOcean] under [the Contract] . . . . For the avoidance of doubt, the Cure Amount includes any and all amounts necessary to cure all defaults of [MPF Corp. Ltd.] under [the Contract] up to the Effective Date, including, without limitation, amounts relating to past due invoices and incidental costs claimed by [InOcean].

[InOcean's Ex. No. 6 at 4, ¶ 1.3].

> I. [MPF] desires, subject to the terms and conditions of this Agreement, (a) to transfer [the Contract] and all of its obligations, rights, title(s) and interests under [the Contract] to [COSCO], (b) that [COSCO] pay the Cure Amount . . . to [InOcean], and (c) to be released from all of its obligations and liabilities under [the Contract].
>
> . . .
>
> J. [COSCO] desires, subject to the terms and conditions of this Agreement, (a) to have [the Contract] transferred to it, (b) to pay the Cure Amount to [InOcean], and (c) to assume [the Contract] and all of [MPF's] obligations, rights, title(s) and interests under [the Contract] . . . .

[*Id.*].

8. On June 3, 2010, MPF and MPF-01 Ltd. entered into an Assignment and Purchase Agreement (the APA) with COSCO wherein COSCO agreed to purchase and assume their "rights, title and interest in and to certain assets and contracts . . . ." [InOcean's Ex. No. 5 at 4]. In relevant part, the APA provided:

> Novation Agreements.  Prior to the Closing Date, MPF and Purchaser [i.e., COSCO] shall enter into a novation agreement with each Vendor . . . pursuant to which, effective as of the Closing Date, the Parties shall implement the purchase and sale described in Section 2.1, Purchaser shall assume all obligations and liabilities of MPF or MPF-01, as applicable, arising under, or relating to, all Vendor Contracts (including the obligation to pay the Cure Amounts . . . ), MPF and its related parties shall be released by all Vendors from any and all obligations and liabilities arising under, or relating to, the Vendor Contracts, and all Vendors waive any claims or causes of action against MPF and its related parties; provided, however, that, if MPF, Purchaser and a Vendor cannot agree to the terms of a Novation Agreement, Sellers may, at the sole option and direction of Purchaser, seek approval from the Bankruptcy Court to assume and assign the applicable Vendor Contract pursuant to Section 365 of the Bankruptcy Code, subject to the payment of the Cure Amount set forth in the applicable Assignment Order.

[*Id.* at 8].  The APA defines "Cure Amount" as follows:

> [W]ith respect to a Vendor Contract, the amount of money necessary to cure all defaults of Sellers under such Vendor Contract, (a) as set forth on Schedule A and agreed to by and among the Vendor under such Vendor Contract, Sellers and Purchaser in the applicable Novation Agreement, or (b) as set forth in an Assignment Order.

[*Id.* at 5].

9. On June 8, 2010, the Debtors filed their Amended Joint Plan of Reorganization (the Plan).

[Main Case Doc. No. 392]; [InOcean's Ex. No. 8]. Section 4.01 of the Plan—"Sale of

the Acquired Assets"—authorizes the Debtors to sell their Acquired Assets[4] to COSCO.

That section, in pertinent part, reads as follows:

> The Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Purchaser, pursuant to the terms of the [APA] . . . and the relevant Novation Agreements . . . and/or the Confirmation Order with respect to executory contracts that may be assumed and assigned in the absence of a Novation Agreement.

[InOcean's Ex. No. 8 at 16].

Section 4.03 of the Plan, entitled "The Litigation Trust and Litigation Trustee,"

established a Litigation Trust and provided that all "Causes of Action" not expressly

released were transferred to a Litigation Trust to be pursued by a Litigation Trustee (Jeff

Compton). [*Id.* at 18–20].

Section 6.01 of the Plan, entitled "Assumption/Rejection," provides:

> The Debtors will assume and assign to the Purchaser all executory contracts identified on Schedule 1[5] to the Plan pursuant to each applicable Novation Agreement.

> On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan or the Assignment and Purchase Agreement and the applicable Novation Agreement . . . .

[*Id.* at 23]. "Novation Agreement" is defined under the Plan as follows:

---

[4] The Plan defines "Acquired Assets" as "such assets of the Debtors that will be transferred to [COSCO] pursuant to the [APA]. [InOcean's Ex. No. 8 at 3, ¶ 5].

[5] InOcean was listed as a vendor on Schedule 1 of the Plan. *See* [Main Case Doc. No. 392-43, at 1].

> [A]ny one of the agreements between the Debtors, the Purchaser, a Vendor, and/or DvB, as applicable, pursuant to which the Debtors will assign their rights under the applicable Vendor Contract to the Purchaser, which Novation Agreement shall include, among other things, the agreed upon Cure Cost with respect to such applicable Vendor Contract.

[*Id.* at 10, ¶ 72].

"Vendor Contract" means "each contract and agreement described on Schedule A to the Assignment and Purchase Agreement (including all amendments, modifications, supplements, waivers, change orders, or other variations thereto) which will be assumed and assigned to the Purchaser in connection with the sale of the Acquired Assets." [*Id.* at 12, ¶ 96].

With respect to "Cure Amounts," the Plan provides "[t]he Cure Amount with respect to any executory contract to be assigned pursuant to the terms of the Assignment and Purchase Agreement and a Novation Agreement shall be the amount set forth in the applicable Novation Agreement and identified on Schedule 1 to this Plan." [*Id.* at 23]. "Cure Costs" are defined as "all costs required of a Debtor to cure any and all defaults including pecuniary losses, pursuant to Bankruptcy Code § 365, of such Debtor arising under any executory contract to which such Debtor is a party, or any unexpired lease to which such Debtor is a party." [*Id.* at 7, ¶ 40].

10. On June 9, 2010, this Court held a disclosure statement and confirmation hearing. At the hearing, Mr. Richard Petrie, financial advisor to the Debtors, testified as follows:

> I just wanted to expand slightly on the novation process. Mostly those have been two steps. There's been a novation agreement between COSCO, MPF and the vendor, and usually a separate agreement between COSCO and the vendor, which has dealt mostly with the modifications and changes, but just as to illustrate to the Court that this had been quite detailed and complex and each one of these has had to be negotiated.

> I think just another clarification in terms of the work being assumed by COSCO, they have taken over the responsibilities that MPF had for the completion of the vendor novation contracts that we had, but in addition to that, they will have substantial integration work to do; and, therefore, there's significant risk and professionals needed to complete the project.

[June 9, 2010 Tr. at 58:7–58:21].  Further, Debtors' counsel, Courtney S. Lauer, stated:

> I would like to announce that initially there were two vendors that we had not reached agreement with, with respect to novation agreements that were outstanding and we contemplated possibly seeking to assume and assign their contracts over their objections, if necessary, but in the interim, we have reached agreements with those two vendors, such that all of the vendors that are identified in the Assignment and Purchase Agreement, have reached agreements with the Debtors in COSCO and all assignments will be done on that Schedule 1, pursuant to consensual novation agreements with those vendors.

[*Id.* at 24:8–18].

11.  On June 14, 2010, this Court entered an "Order Confirming Debtors' Amended Joint Plan of Reorganization (as modified)" (the Confirmation Order).  [Main Case Doc. No. 401].  The Confirmation Order contains the following relevant language:

> Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, as of the Effective Date, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease: (a) is being assumed pursuant to the Plan or the Assignment and Purchase Agreement and the applicable Novation Agreement . . . .  This Confirmation Order shall constitute an order of the Court under Bankruptcy Code § 365 approving the contract Novation Agreements, each as of the Effective Date.

[*Id.* at 24, ¶ 20].

> Assumption of Executory Contracts and Leases.  The Court finds and concludes that the assumption or rejection of executory contracts pursuant to the Plan is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors and their respective Estates and further finds that the terms and provisions of the Novation Agreements

attached to the Plan as Exhibit B,[6] with the Vendors listed on Schedule 1 of the Plan[7] are reasonable and appropriate to effect the assumption and assignment of such Vendor Contracts.

[*Id.* at 17–18, ¶ LL].

12. The effective date of the Plan was August 9, 2010.

13. On September 22, 2010, the Litigation Trustee initiated the above-referenced adversary proceeding by filing a "Complaint to Avoid and Recover Preferential Transfers Pursuant to 11 U.S.C. §§ 547 and 550" (the Complaint). [Adv. Doc. No. 1]. The Complaint alleges the receipt of avoidable preferences by InOcean in the amount of "at least" $309,555.19. [*Id.* at ¶ 7].

14. On January 14, 2011, this Court issued an Order dismissing the above-referenced adversary proceeding after finding that the Plan did not "specifically and unequivocally" preserve the cause of action brought by the Litigation Trustee to recover alleged preferential payments from InOcean, as required under existing Fifth Circuit law. [Adv. Doc. No. 14]. On March 8, 2011, this Court certified the issue for direct appeal to the Fifth Circuit Court of Appeals. [Adv. Doc. No. 26].

15. On November 14, 2012, the Fifth Circuit Court of Appeals issued its decision. *See Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449 (5th Cir. 2012). The Fifth Circuit found that the Plan was sufficiently specific and unequivocal in that it "excluded 'any Cause of Action released in connection with or under the Plan or by prior order of the Court' from the scope of reserved claims." *Id.* at 452. However, the Fifth Circuit remanded back to this Court the issue of whether individual defendants

---

[6] The Novation Agreement among MPF, InOcean, and COSCO is attached to the Plan as Exhibit B.

[7] InOcean was listed as a vendor on Schedule 1 of the Plan. *See* [Main Case Doc. No. 392-43, at 1].

(such as InOcean) were, in fact, "released in connection with or under the Plan or by prior order of the Court." *Id.* at 457.

16. On January 8, 2013, InOcean filed the Motion to Dismiss. [Adv. Doc. No. 28].

17. On January 29, 2013, the Litigation Trustee filed his Response opposing the Motion to Dismiss. [Adv. Doc. No. 29].

18. On March 28, 2013, this Court held a hearing on the Motion to Dismiss. Counsel for the Litigation Trustee and counsel for InOcean appeared and made arguments. The Court then took the matter under advisement.

### III.    CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding in the first instance pursuant to 28 U.S.C. § 157(b)(2)(L) due to the need to interpret certain Plan provisions. The Fifth Circuit has consistently held that a bankruptcy court has post-confirmation jurisdiction over matters "that bear on the interpretation or execution of the debtor's plan." *Bank of La. v. Craig's Stores of Tex., Inc. (In re Craig's Stores of Tex., Inc.)*, 266 F.3d 388, 390 (5th Cir. 2001); *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002); *Newby v. Enron Corp. (In re Enron Corp. Sec.)*, 535 F.3d 325, 335 (5th Cir. 2008). This is also a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (F) because it is a proceeding to determine, avoid, or recover a preference and the remedy sought is turnover of property of the estate. Finally, this suit is core under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a

bankruptcy case."); *De Montaigu v. Ginther (In re Ginther Trusts)*, Adv. No. 06-3556, 2006 WL 3805670, at \*19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance."). Venue is proper pursuant to 28 U.S.C. § 1409(a).

**B.      Constitutional Authority to Enter a Final Order**

The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' constitutional authority to enter final orders. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it. The Court concludes that the facts in the pending suit are distinguishable from those in *Stern*, and that this Court has the authority to enter a final order in this adversary proceeding. In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* First, the dispute at bar is distinguishable from *Stern* because it requires this Court to interpret language in the Plan. Additionally, the instant adversary proceeding is distinguishable from the suit in *Stern* because here, the Litigation Trustee seeks relief pursuant to express provisions of the Code: §§ 547 and 550. Thus, the cause of action and the requested relief are based on express provisions of the Code rather than on state law, which formed the basis for the counterclaim in *Stern*. For these reasons, this Court is constitutionally authorized to enter a final order in this adversary proceeding.

**C.**     **The Complaint Should be Dismissed Pursuant to Federal Rule of Bankruptcy Procedure 7012(b)(1) Because this Court Lacks Subject Matter Jurisdiction to Hear and Determine the Litigation Trustee's Claims**

Federal Rule of Bankruptcy Procedure 7012 provides that Federal Rule of Civil Procedure 12 applies in adversary proceedings. Fed. R. Bankr. P. 7012(b). Under Federal Rule of Civil Procedure 12(b)(1), this Court must dismiss the complaint if it finds that it lacks subject matter jurisdiction to hear the dispute.[8] "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" *Champions Truck & Equip. Inc. v. Patterson*, 2008 U.S. Dist. LEXIS 55343, at *5 (S.D. Tex. July 21, 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). Here, InOcean alleges that this Court is without subject matter jurisdiction to consider the instant cause of action because the Litigation Trustee lacks standing to assert the claim. [Adv. Doc. No. 28]; *see also S. La. Ethanol, LLC v. Messer*, 2012 U.S. Dist. LEXIS 88046, at *5 (E.D. La. June 25, 2012) ("Standing is one element of the constitutional power to adjudicate a case . . . .").

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) may be characterized as either facial or factual. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A facial attack is based solely upon the complaint itself, whereas "[a] 'factual attack' . . . challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* Though not expressly stated, it is apparent that the Motion to Dismiss raises a factual attack

---

[8] The Court notes that it has jurisdiction to determine whether it has subject matter jurisdiction over the dispute at bar. *See Henry v. United States*, 277 Fed. App'x 429, 434 n. 11 (5th Cir. 2008) ("A court always has jurisdiction to consider its jurisdiction . . . ") (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute)); *Trevino v. Michelin N. Am., Inc.*, 2006 U.S. Dist. LEXIS 17754, at *26 (S.D. Tex. Mar. 23, 2006) ("The court has the authority to pass upon its own jurisdiction . . . ") (quoting *Chicot County Drainage Dist.*, 308 U.S. at 376).

since it is not based solely upon the Complaint, and refers to documents outside the pleadings such as the Plan and Novation Agreement. *See* [Adv. Doc. No. 28].

In considering a factual attack brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Fifth Circuit quoted the following language with approval:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Williamson v. Tucker*, 645 F.2d 404, 412–13 (5th Cir. 1921) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "The district court consequently has the power to dismiss for lack of subject matter jurisdiction on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* at 413. Finally, the burden of proof is on the party asserting that subject matter jurisdiction exists—here, the Litigation Trustee. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

1. The Litigation Trustee Lacks Standing to Pursue the Instant Preference Action Because the Contract was Assumed and Assigned Pursuant to Section 365 of the Code

The contract assumption defense provides that when a debtor assumes an executory contract in bankruptcy, the debtor may not later pursue an avoidance claim for preferential payments made pursuant to that contract. *See Kimmelman v. Port Auth. of N.Y. & N.J. (In re Kiwi Air Lines, Inc.)*, 344 F.3d 311, 322–23 (3d Cir. 2003); *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169, 1174 (7th Cir. 1996); *Alvarado v. Walsh (In re LCO Enters.)*, 12 F.3d 938, 943 (9th Cir. 1993); *Seidle v. Gatx Leasing Corp.*, 778 F.2d 659, 665 (11th Cir. 1985). In the instant

dispute, InOcean alleges that the agreement underlying the alleged preferential transfers (i.e., the Contract) "was assumed and assigned to COSCO pursuant to the terms of the agreements, Plan, Disclosure Statement and Confirmation Order." [Adv. Doc. No. 28 at 28]. Therefore, InOcean argues that the contract assumption defense bars the Litigation Trustee from pursuing the instant preference action. *Id.*

The Litigation Trustee alleges that the contract assumption defense does not apply to the present dispute because the Contract was not assumed and assigned pursuant to section 365 of the Code. [Adv. Doc. No. 29 at 17, ¶ 49]. Instead, the Litigation Trustee claims that the Novation Agreement is what it purports to be—a novation—and thus InOcean is precluded by definition from asserting the contract assumption defense. [*Id.* at 21, ¶ 62]. Alternatively, the Litigation Trustee alleges that even if the Court finds that there was a valid assumption and assignment under section 365, the contract assumption defense is nonetheless inapplicable in the present case. [*Id.* at 30, ¶ 85].

This Court will first address the question of whether the Contract was assumed and assigned pursuant to section 365 of the Code, and then will turn to the question of whether to apply the contract assumption defense.

   a.  *The language of the Plan and Confirmation Order unambiguously indicates that the Contract was assumed and assigned*

Section 365 of the Code provides that, subject to the court's approval, a trustee[9] may assume any executory contract[10] of the debtor. 11 U.S.C. § 365(a). Further, section 365(b)(1), in relevant part, states that:

_____

[9] A debtor in possession may also assume an executory contract, as 11 U.S.C. § 1107 provides that a debtor in possession has most of the rights, powers, and duties of the trustee.

[10] "Executory contract" is not defined by the Code. The most commonly cited definition of "executory contract" is an agreement in which "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." V.

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of the assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will properly cure, such default . . . .

11 U.S.C. § 365(b)(1).   As a preliminary matter, the Court notes that the Contract was an executory contract.[11]   The Contract was listed as such on the MPF's Schedule G [Finding of Fact No. 5], and the Litigation Trustee has not disputed this characterization.   Additionally, section 6.01 of the Plan refers to a list of executory contracts, and this list includes the Contract. [Finding of Fact No. 9].

Further, the plain language of the Plan and Confirmation Order indicates that the Contract was assumed and assigned.   First, the Plan itself demonstrates that executory contracts were assumed and assigned pursuant to the "applicable novation agreements."   [Finding of Fact No. 9].   The section of the Plan entitled "Assumption/Rejection" provides:

> The Debtors will assume and assign to the Purchaser all executory contracts identified on Schedule 1 to the Plan pursuant to each applicable Novation Agreement.
>
> On the Effective Date, and to the extent permitted by applicable law, all of the Debtors' executory contracts and unexpired leases will be rejected unless such executory contract or unexpired lease:  (a) is being assumed pursuant to the Plan or the Assignment and Purchase Agreement and the applicable Novation Agreement . . . .

---

Countryman, *Executory Contracts in Bankruptcy:  Part I*, 57 MINN. L. REV. 439, 460 (1974); *see also Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62–63 (5th Cir. 1994) (citing this definition with approval); *In re Tex. Wyo. Drilling, Inc.*, 486 B.R. 746, 754 (Bankr. N.D. Tex. 2013) (noting that the Fifth Circuit has adopted the Countryman definition).

[11] The Litigation Trustee argues that the Contract was not an executory contract because "[p]erformance did not remain due on both sides of [the Contract]."   [Adv. Doc. No. 29 at 29, ¶ 70].   The Litigation Trustee relies on specific language in the Novation Agreement stating that the parties agreed "that work under [the Contract] has been completed . . . ."   [InOcean's Ex. No. 6 at 2, ¶ E].   This argument is without merit.   Regardless of any subsequent agreement among the parties, the point in time for determining whether a contract is executory is the date the bankruptcy petition is filed.   *In re MCorp. Fin., Inc.*, 122 B.R. 49, 50 (Bankr. S.D. Tex. 1990); *In re Fryar*, 99 Bankr. 747, 749 (Bankr. W.D. Tex. 1989); *In re C.M. Turtur Invs., Inc.*, 93 Bankr. 526, 536 (Bankr. S.D. Tex. 1988).   Thus, the fact that the parties subsequently agreed that work under the Contract had been completed does not change the fact that the Contract was executory on the date MPF filed its bankruptcy petition.

[*Id.*]. "Novation Agreement" is defined under the Plan as follows:

> [A]ny one of the agreements between the Debtors, the Purchaser, a Vendor, and/or DvB, as applicable, pursuant to which the Debtors will assign their rights under the applicable Vendor Contract to the Purchaser, which Novation Agreement shall include, among other things, the agreed upon Cure Cost with respect to such applicable Vendor Contract.

[*Id.*].

The Contract was an "executory contract[] identified on Schedule 1 to the Plan." [*Id.*]. As such, the Contract was assumed and assigned pursuant to the Novation Agreement. Together, these provisions of the Plan make clear that the novation agreements were simply the means by which the Debtors were to assume and "assign their rights under the applicable Vendor Contract to the Purchaser." [*Id.*].

In addition, the Confirmation Order expressly authorizes the assumption of executory contracts under section 365 pursuant to the novation agreements. The Confirmation Order provides that "all of the Debtors' executory contracts and unexpired leases will be *rejected unless* such executory contract or unexpired lease: (a) is being *assumed* pursuant to the Plan or the Assignment and Purchase Agreement and the applicable Novation Agreement . . . ." [Finding of Fact No. 11] (emphasis added). The Confirmation Order also states, "[t]his Confirmation Order shall constitute an order of the Court under Bankruptcy Code § 365 approving the contract Novation Agreements . . . ." [*Id.*]. Further, in the Confirmation Order, this Court found:

> that the assumption or rejection of executory contracts pursuant to the Plan is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors and their respective Estates and further finds that the terms and provisions of the Novation Agreements attached to the Plan as Exhibit B,[12] with

---

[12] The Novation Agreement among the MPF, InOcean, and COSCO is attached to the Plan as Exhibit B.

> the Vendors listed on Schedule 1 of the Plan[13] are reasonable and appropriate to effect the assumption and assignment of such Vendor Contracts.

[*Id.*].  There would have been no need to include this language in the Confirmation Order had the parties not contemplated that the Vendor Contracts, including the Contract, were being assumed and assigned pursuant to section 365.

In response, the Litigation Trustee focuses on isolated language in the APA and the Plan, which allegedly demonstrates that novation and section 365 assumption and assignment were two separate and alternative mechanisms for transferring the Debtors' interest in the Contract to COSCO.[14]  [Adv. Doc. No. 29 at 20, ¶ 60].  Specifically, the Litigation Trustee emphasizes the following language in the APA:

> [I]f MPF, Purchaser and a Vendor cannot agree to the terms of a Novation Agreement, Sellers may, at the sole option and direction of Purchaser, seek approval from the Bankruptcy Court to assume and assign the applicable Vendor Contract pursuant to Section 365 of the Bankruptcy Code, subject to the payment of the Cure Amount set forth in the Applicable Assignment Order.

[Finding of Fact No. 8].  Notably, this language does *not* state that the novation agreements did not accomplish assumption and assignment on their own pursuant to section 365, or that entering into a novation agreement is a stark alternative to assumption and assignment under section 365.

As discussed above, the Plan and Confirmation Order make clear that the novation agreements were not alternatives to assumption and assignment; rather, they were the *means* of accomplishing assumption and assignment pursuant to section 365.  Thus, when considered in context, this language from the APA merely indicates that novation agreements were the first or preferred means of accomplishing consensual assumption and assignment pursuant to section

---

[13] InOcean was listed as a vendor on Schedule 1 of the Plan.  *See* [Main Case Doc. No. 392-43, at 1].

[14] In addition, the Litigation Trustee calls into question the alleged assumption under section 365 by noting that "the assumption and assignment did not benefit [the Debtors'] estate . . . ."  [Adv. Doc. No. 29 at 30, ¶ 71].  Contrary to the Litigation Trustee's assertion, this Court explicitly found that "the assumption or rejection of executory contracts pursuant to the Plan is a reasonable exercise of the Debtors' business judgment and is in the best interests of the Debtors and their respective Estates . . . ."  [Finding of Fact No. 11].  Accordingly, the Court rejects the Litigation Trustee's argument.

365.  In the event that the parties were unable to do so, the APA provided a way for the parties to pursue traditional, non-consensual assumption and assignment pursuant to section 365.

The Trustee also cites the following language from the Plan in support of his position that assumption and assignment is separate and distinct from novation:

> The Debtors will seek authority, in connection with Confirmation of the Plan, to sell the Acquired Assets to the Purchaser, pursuant to the terms of the [APA] . . . and the relevant Novation Agreements . . . and/or the Confirmation Order with respect to executory contracts that may be assumed and assigned in the absence of a Novation Agreement.

[Finding of Fact No. 9].  Here, again, there is no language indicating that assumption and assignment cannot occur pursuant to a novation agreement.  The fact that assumption and assignment may occur "in the absence of a [n]ovation [a]greement" does not mean that assumption and assignment cannot also occur consensually pursuant to a novation agreement. [*Id.*].

Moreover, the fact that the Plan and APA referred to the payments to be made to the vendors as "Cure Amounts" or "Cure Costs," regardless of whether the payments were made pursuant to novation agreements or pursuant to assumption orders, is further evidence that assumption and assignment pursuant to section 365 was contemplated in both instances.  *See* [Finding of Fact Nos. 8 & 9].  Section 365 explicitly provides that where there has been a default under an executory contract, the trustee may not assume that contract without *curing* the default. 11 U.S.C. § 365(b)(1).  Thus, the fact that the parties referred to the amounts to be paid to the vendors as cure amounts or cure costs indicates that the payments were being made to cure defaults in order to allow for assumption pursuant to section 365.

In sum, the Court finds that the language in the Plan and Confirmation Order unambiguously indicates that the Contract was assumed and assigned pursuant to section 365,

and that the Novation Agreement was merely the means by which this assumption and assignment was carried out. Of particular importance is the language in the Plan indicating that "[t]he Debtors will assume and assign to the Purchaser [i.e., COSCO] all executory contracts identified on Schedule 1 to the Plan[,]" which included the Contract [Finding of Fact No. 9]; and the language in the Confirmation Order stating that it constitutes "an order of the Court under Bankruptcy Code § 365 approving the contract Novation Agreements . . . ." [Finding of Fact No. 11]. Because the language is unambiguous, further discovery is unwarranted; rather, the Court will rely solely on the four corners of the relevant documents.

      b. *Courts have held that section 365 is the sole provision for dealing with executory contracts in bankruptcy*

The Litigation Trustee argues that there is a non-section 365 way to assume and assign an executory contract—namely, a novation. [Adv. Doc. No. 29 at 26]. Yet, he has pointed to no case law addressing circumstances in which an executory contract in bankruptcy was dealt with other than pursuant to section 365. To the contrary, courts have held that section 365 is the exclusive means of effectuating assumption and assignment of executory contracts in bankruptcy. Two cases help shed light on this issue.

In *Robinson Truck Line, Inc.*, the debtor sought to assume an executory contract and proposed to treat the arrearages under the contract as a priority claim to be paid at a rate of $4,000 per month. *In re Robinson Truck Line, Inc.*, 47 B.R. 631, 637 (Bankr. N.D. Miss. 1985). Section 365, which provides that the debtor may not assume an executory contract unless it cures any default or provides adequate assurance that it will promptly cure any default, would allow for the debtor's proposed treatment of the delinquencies so long as the debtor could provide adequate assurance of prompt cure. *Id.* (citing 11 U.S.C. § 365(b)(1)(A)). However, in this case, section 365 appeared to conflict with section 1129(a)(9), which would have required the debtor

to pay the priority claim in full on the effective date of the plan unless the creditor agreed otherwise. *Id.* Thus, the issue before the court was "whether the requirements of a prompt cure under [section] 365 serve to override the requirements of immediate payment under [section] 1129(a)(9)." *Id.* at 637–38.

The court noted that 11 U.S.C. § 1123(b)(2) governs the contents of a plan and "specifically states that if a debtor wishes to provide for the assumption or rejection of any executory contract or unexpired lease within the context of his plan, he must do so subject to [section] 365 of Title 11." *Id.* at 638. Therefore, the court concluded that 11 U.S.C. § 365 "is the exclusive remedy" for dealing with executory contracts in Chapter 11. *Id.* Since the contract at issue was an executory contract, the court found that section 365 controlled. *Id.* Thus, the debtor was permitted to provide the creditor with adequate assurance of a prompt cure rather than required to make immediate payment under section 1129(a)(9). *Id.*

In *Chira*, the debtor entered into a prepetition contract to sell a hotel in which he owned a fifty percent interest. *Chira v. Saal (In re Chira)*, 367 B.R. 888, 890 (S.D. Fla. 2007). Before the sale took place, the debtor was forced into involuntary bankruptcy. *Id.* at 889–90. The purchaser under the sales contract filed a motion in the bankruptcy court to compel the debtor's estate to either assume or reject the contract. *Id.* at 891. Thereafter, the purchaser and the bankruptcy trustee reached a settlement agreement concerning assumption of the contract. *Id.* The settlement agreement modified the original sales contract by requiring the trustee to eliminate a lease that burdened the property in exchange for additional payments to the estate by the purchaser. *Id.* at 892.

The trustee then filed a motion to assume the contract and settle the dispute with the purchaser, which the bankruptcy court granted. *Id.* The other fifty percent owner of the property

appealed, alleging that because the settlement agreement modified the original sales contract, the sales contract could no longer be assumed under section 365. *Id.* The court held that modification of the original agreement did not preclude the trustee from assuming the agreement pursuant to section 365, noting that, "[i]n the context of executory contracts, courts have recognized section 365 as the exclusive remedy available to parties wishing to sell property or other assets of the estate." *Id.* at 900.

The *Robinson* court's conclusion that section 365 is the exclusive remedy for dealing with executory contracts in Chapter 11 is equally applicable here. *In re Robinson Truck Line, Inc.*, 47 B.R. at 638. Furthermore, *Chira* makes clear that modification of the contract to be assumed is permissible. *See Chira*, 367 B.R. at 900. Here, the Litigation Trustee argues that "modifications to [the Contract]"[15] preclude it from being assumed because section 365 requires the debtor to "assume [an executory contract] according to [its] terms." [Adv. Doc. No. 29 at 28, ¶ 65] (citing *In re Rigg*, 198 B.R. 681, 685 (Bankr. N.D. Tex. 1996)). Since the Novation Agreement allegedly modifies the terms of the Contract, the Litigation Trustee concludes that the Contract cannot have been assumed under section 365.

This Court rejects this argument. The *Chira* court, citing the Fifth Circuit's holding in *Richmond Leasing*, emphasized that "the often-repeated statement that the debtor must accept the contract as a whole means only that the debtor cannot choose to accept the benefits of the contract and reject its burdens to the detriment of the other party to the agreement." *In re Chira*, 367 B.R. at 899 (quoting *Richmond Leasing v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985)). In other words, *Chira* holds that modifications to an executory contract are permissible as long as the debtor does not merely accept the benefits of the contract and reject the burdens to

---

[15] The Litigation Trustee did not point to any evidence indicating that the parties modified the Contract. However, even if the parties did alter the Contract, modification of an executory contract is permissible in certain circumstances, which the Court addresses herein.

the detriment of the other party. Here, the Litigation Trustee has not alleged that MPF rejected the burdens of the Contract to the detriment of InOcean. Even if that were true, InOcean voluntarily agreed to any alleged modifications of the Contract contained in the Novation Agreement. This does not, in turn, mean that section 365 no longer applies. Rather, it means that the Novation Agreement represents a *consensual* assumption and assignment under section 365. This Court finds that there is nothing inconsistent about InOcean agreeing to these modifications and assumption under section 365.

The Litigation Trustee's attempt to distinguish an assumption and assignment from a novation is misguided. Regardless of whether a transaction is labeled a novation or an assumption and assignment, the end result is the same: the original party transfers its rights and obligations under an executory contract to a third party. If the transaction occurs when the original party is in bankruptcy, the original party cannot transfer the executory contract without first assuming it under section 365. *In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006) ("According to § 365(f)(2)(A), assumption must precede assignment."); *Cinicola v. Scharffenberger*, 248 F.3d 110, 120 (3d Cir. 2001) ("Before an executory contract may be assigned, the trustee first must assume the contract . . . ."). Thus, in order for MPF to assign—or "novate"—the Contract to COSCO, it first had to assume the Contract. And, as the case law has made clear, assumption of an executory contract in bankruptcy can only be accomplished through section 365.

In sum, this Court rejects the Litigation Trustee's attempt to characterize the Novation Agreement as an alternative, non-section 365 means of dealing with the Contract. As *Chira* and *Robinson* have made clear, section 365 is the exclusive provision for dealing with executory

contracts in bankruptcy. This conclusion does not change merely because InOcean allegedly agreed in the Novation Agreement to modifications that were not required by section 365.

    c. *The Litigation Trustee's alternative arguments are unpersuasive*

The Litigation Trustee alleges that even if there was a valid assumption and assignment under section 365, the contract assumption defense is nonetheless inapplicable in the present case. [Adv. Doc. No. 29 at 29–30, ¶ 85]. To support its position, the Litigation Trustee makes three arguments that have no bearing on the application of the contract assumption defense; therefore, this Court rejects these arguments.

First, the Litigation Trustee alleges the following:

> InOcean's [contract assumption defense argument] rests on the unproven assumption that had the preference payments not been made pre-petition then the Debtors still would have assumed the contract post-petition and thereby obligated their estates to pay the full amount of those preference payments plus all the other cure amounts. There is no basis for speculating that with those entirely different economics the Debtors or COSCO would have wanted to assume [the Contract] or that the Court would have approved such assumption.

[Adv. Doc. No. 29 at 30, ¶ 86].

The Litigation Trustee's argument is both difficult to interpret and wholly irrelevant. As discussed above, MPF *did* assume the Contract with InOcean and subsequently assigned it to COSCO. Whether MPF still would have assumed the Contract had it not made prepetition payments to InOcean has no bearing on whether the contract assumption defense applies. Further, the Litigation Trustee argues that "[t]here is no basis for speculating that COSCO would have entered into the Novation Agreement if the preference payment amounts were added to the burden of [the Contract]. [*Id.* at ¶ 87]. This argument is immaterial. COSCO did, in fact, enter into the Novation Agreement and agreed to pay InOcean the Cure Amount. [Finding of Fact No. 7]. Whether COSCO still would have entered into the Novation Agreement had it been required

to pay more than the Cure Amount is irrelevant. The Court therefore rejects the Litigation Trustee's argument.

Finally, the Litigation Trustee argues that the rationale behind the contract assumption defense does not apply to the present case. [Adv. Doc. No. 29 at 31, ¶ 88]. The Litigation Trustee contends that:

> [t]he reasoning of [the contract assumption defense] is that because § 365 mandates that a contract counter-party be 'made whole'[16] before it can be forced to continue working for a debtor in bankruptcy, that counter-party is entitled to a return of any preferential transfers which the Trustee recovers. Here, InOcean agreed not to be made whole and was not forced to perform future services for the Debtors.

[*Id.*]. The Litigation Trustee alleges that there were two ways for InOcean to proceed with the Contract after MPF filed its bankruptcy petition: (1) agree to new and different terms with COSCO; or (2) hope that MPF assumes the Contract and pays InOcean a cure obligation. [Adv. Doc. No. 29 at 31, ¶ 88]. By choosing the first option, the Litigation Trustee concludes that InOcean essentially waived its right to be "made whole" and thus the rationale behind the contract assumption defense cannot be applied.

The Litigation Trustee's argument is unpersuasive. First, the Litigation Trustee improperly characterizes InOcean's "options" for proceeding with the Contract. As explained above, assuming the Novation Agreement modifies the terms of the Contract, it was perfectly permissible for MPF, InOcean, and COSCO to modify the terms of the Contract *and* for MPF to assume the Contract—the two transactions were not mutually exclusive.

Moreover, contrary to the Litigation Trustee's assertion, the fact that InOcean ultimately agreed to perform work for COSCO rather than MPF does not prevent InOcean from being "made whole." In fact, the Novation Agreement ensures that InOcean will be made whole by

---

[16] The Litigation Trustee is referring to section 365(b)(1), which provides that where there has been a default under an executory contract, the trustee may not assume the contract without curing the default. 11 U.S.C. § 365(b)(1).

calling for COSCO to pay InOcean the "Cure Amount," which the Novation Agreement defines as "the amount of money that as of the Effective Date the Parties will deem owed to [InOcean] under [the Contract] . . . includ[ing] any and all amounts necessary to cure all defaults of [MPF] under [the Contract] . . . ." [Finding of Fact No. 7 n.3]. As discussed above, this language demonstrates that the parties specifically contemplated section 365; the fact that the parties referred to the amounts to be paid to the vendors as "Cure Amount[s]" shows that the payments were being made to cure defaults in order to allow for assumption pursuant to section 365. Thus, there is no support for the Litigation Trustee's argument that InOcean waived its right to be made whole.

d. *The Motion to Dismiss should be granted because the contract assumption defense bars the instant preference action*

Now that this Court has determined that the Contract was assumed and assigned pursuant to section 365 of the Code, it turns to the issue of whether the contract assumption defense bars the Litigation Trustee from pursuing the instant preference action. The contract assumption defense stems from *In re Superior Toy & Mfg. Co.*, a case decided by the Seventh Circuit Court of Appeals. *In re Superior Toy & Mfg. Co.*, 78 F.3d 1169. There, the court held that a trustee could not bring a preference suit to recover payments made pursuant to an executory contract that was assumed. *Id.* at 1176. The court reasoned that permitting a preference suit on an executory contract that had been assumed would undermine the purpose of section 365—namely, "to insure that a contracting party is made whole before a court can force the party to continue performing with a bankrupt debtor." *Id.* at 1174. The Fifth Circuit has not yet ruled on the viability of the contract assumption defense, although at least two courts within the Circuit have recognized and applied the defense.

In *Noble*, the debtor made prepetition payments to a creditor pursuant to a licensing agreement. *Noble v. ADP, Inc. (In re Jazzland, Inc.)*, Adv. No. 03-1202, 2004 WL 4945990, at *1 (Bankr. E.D. La. 2004). After the debtor filed a Chapter 11 petition, the bankruptcy court granted the debtor's motion to assume the licensing agreement. *Id.* Thereafter, the debtor's disbursing agent brought a preference suit to recover the payments made to the creditor. *Id.* Citing the contract assumption defense, the court held that the debtor's assumption of the licensing agreement precluded it from bringing a preference action against the creditor. *Id.* at *2. The court reasoned that, "[u]nder § 365, if assumption is approved, as it was in this case, the debtor must cure all prepetition defaults under the assumed contract. The estate cannot become bound to pay amounts due under an assumed contract and also recover for the estate payments made prepetition under the contract." *Id.*

Similarly, in *MMR Holding*, the debtor sought to recover prepetition payments made pursuant to a contract that was subsequently assumed and assigned to a third party. *MMR Holding Corp. v. C & C Consultants (In re MMR Holding Corp.)*, 203 B.R. 605, 606–07 (Bankr. M.D. La. 1996). The court denied the debtor's requested relief and held that prepetition payments—which might otherwise be recoverable as preferences—are not recoverable if the contract upon which the payments are based is assumed pursuant to section 365 of the Code.[17] *Id.* at 613. The court articulated its reasoning as follows: "the estate cannot simultaneously become administratively obligated for all amounts due under an assumed contract (both pre- and post-petition) and recover for the estate payments made pursuant to the contract." *Id.*

---

[17] *See also In re Brook Mays Music Co.*, 2007 Bankr. LEXIS 2902, at *5 (Bankr. N.D. Tex. 2007). There, pursuant to the court's instructions, the Chapter 7 trustee filed a report regarding his analysis of all potential preference actions. *Id.* at *2. After reviewing the report, the court ordered the trustee not to sue any party that received payments from the debtor pursuant to an executory contract that was ultimately assumed. *Id.* at *5–6.

The Court finds the reasoning of the above-cited decisions persuasive. For these reasons, this Court holds that the contract assumption defense is applicable to the instant proceeding. Thus, because the Contract was assumed pursuant to section 365, the contract assumption defense bars the Litigation Trustee from pursuing the instant preference action.

In sum, this Court concludes that the Novation Agreement was simply the mechanism through which assumption and assignment under section 365 of the Code was accomplished. It is no mere coincidence that multiple references are made to assumption and assignment and the payment of cure amounts throughout the Plan, Confirmation Order, Novation Agreement, and APA. For all of these reasons, the Court concludes that the Contract was assumed by the Debtors under section 365 of the Code. Therefore, under the contract assumption defense, the Litigation Trustee is barred as a matter of law from pursuing the instant preference action.

2. The Court Will Not Address the Issue of Whether the Plan and the Novation Agreement Released InOcean from Any Avoidance Action Brought by the Litigation Trustee

InOcean argues that even if the contract assumption defense is inapplicable, the Litigation Trustee lacks standing to pursue the instant preference action because the Plan released any potential claim or cause of action related to the Contract. [Adv. Doc. No. 28]. However, as discussed above, the Litigation Trustee is barred as a matter of law from pursuing the instant preference action and this Court therefore lacks subject matter jurisdiction over the dispute at bar. Accordingly, the Court declines to address InOcean's alternative argument.

**D.    This Court Will Not Reach the Issue of Whether Dismissal is Warranted Under Federal Rule of Bankruptcy Procedure 7012(b)(6), Nor Will it Address InOcean's Alternative Motion for Summary Judgment Pursuant to Federal Rule of Bankruptcy Procedure 7056**

Federal Rule of Bankruptcy Procedure 7012 provides that Federal Rule of Civil Procedure 12 applies in adversary proceedings. Fed. R. Bankr. P. 7012(b). InOcean has asserted

that Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal for "failure to state a claim upon which relief can be granted," is a separate and independent basis for dismissal.  In light of this Court's finding that it lacks subject matter jurisdiction over the dispute at bar, this Court will not address the issue of whether dismissal is also warranted under Federal Rule of Civil Procedure 12(b)(6).  *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 512 (5th Cir. 1980) ("If the allegations do not survive the jurisdictional attack, then there is no jurisdiction even to consider the other claims, much less to entertain a Rule 12(b)(6) motion to dismiss those claims.").  For this same reason, the Court also declines to address InOcean's alternative motion for summary judgment under Federal Rule of Bankruptcy Procedure 7056.  *See e.g., Chen v. Escareno*, No. H-09-0270, 2009 U.S. Dist. LEXIS 85912 (S.D. Tex. Sept. 18, 2009) (noting that, where motion to dismiss was granted pursuant to Federal Rule of Civil Procedure 12(b)(1), alternative motion for summary judgment was moot).

## IV.   CONCLUSION

For the reasons set forth above, this Court finds that the Litigation Trustee is barred as a matter of law from pursuing the instant preference action and, therefore, this Court lacks subject matter jurisdiction to hear and determine the Litigation Trustee's claim.  Accordingly, this Court will grant the Motion to Dismiss.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed this 21st day of June, 2013.

Jeff Bohm
Chief United States Bankruptcy Judge